All rise. Please be seated. Let's take up Henry the Married to Carr. Please proceed. Thank you, Your Honor. May it please the court. For the audio record, my name is Kirk Blood. I represent Holly Williams, formerly Holly Carr. And we're here on appeal from a St. Clair County child custody judgment. And we're asking this court to reverse and put custody back to the way that it was in the judgment of dissolution of marriage. Just briefly, I think the facts kind of tell the story, explain the case. In April 2014, the judgment of dissolution, there was a marriage settlement agreement, joint parenting agreement. The judge presiding was Randall Kelly. And the sole issue of any significance between the parties was custody of the child born in 2012. At the time of the judgment, the parties and court were well aware that my client was about to move back to her parents' home in Watsika, which is near Chicago. Judge Kelly, for want of a better word, he schmoozed everybody and got contentions ironed out, and got everybody to agree to alternating weeks of custody after my client would move to Watsika. And it would be each parent would have the child for a week, alternating weeks. And that's the way it was for a few months. And then in November, again, the judgment's in April. In November, the father petitioned for rule to show cause, the major issue being that my client had not told him when she had changed pediatricians. She picked one up near Watsika. She didn't tell him fast enough. And Judge Kelly agreed with that. And he sanctioned my client by moving the exchange point for the custody exchange point closer to Belleville, so that my client would then have to do the lion's share of the driving. For six weeks, that was her sanction. And, again, things continued on until March 15th of 2015, when the father filed a motion to modify physical custody schedule. And the decision on that is why we're here. That was heard in July of 2015, last July. But Judge Kelly was no longer on the case. Now it was Judge Julia Gomert, and that was her first decision in the case. And after a hearing at which the parents and no one else testified, Judge Gomert ordered no more alternate weeks. From then on, my client, the mother, would have alternating weekends of visitation and selected holidays. And that's what we're here about. We're here because, in short, there is no—in a case, in a custody case, unless there is something seriously wrong with one of the parents, a preschool child ought to have equal time with the parents. It's not for the parents—I mean, it is for the parents, but it's also for the child. But that's not the issue that brings us here. The issue that brings us here is that Section 610, paragraph B of the Marital Dissolution Act, requires a court changing custody to make certain specific findings on the record. And this work has been outspoken. Fifth District here in Mount Vernon has been outspoken in requiring those findings in a change-of-custody case. And we're excited with the Vollmer case, the Valter case, the Fusting case, in which this Court has said those findings have got to be made. They've got to be made. That the legislation—that that's the legislative intent behind Section 610B, and that the reason which the Court has gone into is that it's not as important to pick a winning and losing parent as it is to give the child stability, to give the child continuity. And this Court has said in those cases that the objective of Section 610B is to make it difficult to change custody by requiring those findings. In this case, those findings simply weren't made. This case was treated as if it was a de novo custody decision. There's some noise in Appellee's brief about custody being reserved, but we have appended the dissolution judgment to the back of our appendix for easy access, and you can see nothing is reserved in that judgment on the issue of custody. Is that clear in the transcripts, Mr. Blood, that that was reserved and that the judge, each time at the hearing, said that was reserved? The judge made some statements about revisiting custody. He did. Judge Kelly did. Yes, Your Honor. But that did not make its way into the judgment. And which controls, Counsel, the written judgment or his pronouncements in court? Your Honor, I don't see how we can go by anything other than the judgment. This is a written judgment. This is a case where judges have changed. Judges retire. They move away. They pass on. I mean, all we've got is the paper. The paper is the judgment. Anything that the judge says is inherently interlocutory. He's always got the right to change his mind before final judgment. The judgment here is the written judgment of dissolution. It was final. It was appealable. And if it had been appealed, what would you be deciding? You wouldn't be deciding his words. You'd be deciding whether that judgment could stand. So it can't be. It can't be what the judge says. It can't be what he says before. It can't be what he says after. It's got to be the judgment. And if you think about it, why would we be hyper-technical about that? This is a case where the child was in alternating weeks' custody with parents. And this is just the sort of situation that the statute should preserve, that the statute should require preserving. So this could have gone on indefinitely, obviously in the best interest of the child. And suddenly the child was wrenched out of it, basically over disagreement on parental conduct. Another question on that same subject. At the time he said that, did he not also reset it for another hearing on that issue? At one point he did, Your Honor. At one point he did. But there is no reason to assume, as I said in the brief, that he was intending to circumvent Section 610. Nor could any statements that he made in open court give me authority to do that. But if he had found afterwards, his main concern was that my client would not find work in Juan Sica. If he had found that her failure to find work was a substantial change in circumstances, we would have a tremendous burden on this court. And if he had found that because of that change in circumstances it was in the best interest of the child to be invaluable in the custody of the father, we would have a tremendous uphill burden, and frankly I had counseled my client not to bring the case to this court with a standard of review like that. But that's not what happened. But Judge Conrad, for that matter, could have found that her failure to find work was a substantial change in circumstances. The circumstances, however, changed again. I mean, she got married and left her parents' house to move to the marital home. In Pawnee, things were substantially changed. Her financial situation substantially changed. But that's beside the point. The court did not comply with Section 610. So when and whether that order was final is really a very important question in this case. It affects the standard of review substantially. Do you agree with that? Absolutely. And that's why I say that I don't think the court should be too hyper-technical about that. I think that it's – although we don't mind what the court is because we think that this meets the standards for 610 review, I mean, it's applied to joint custody cases, and we've cited two of them. But this is a situation where there was continuity, there was stability, and that's been disrupted. And this is a situation where, if not within a micrometer of the statute, it's certainly within its spirit. But I think it isn't within the language, the strict language of the statute. Because, again, if you look at that judgment of dissolution, nothing's reserved. That is a custody decision. It's a full custody decision with nothing reserved. And if the judge set it for review, no reason to think that he wouldn't comply with Section 610. Best interest. Best interest. Unless – in a case like this, unless something is seriously wrong with one of the parents, a preschool child ought to have equal time with two parents that live apart. When the school starts, things are different. But depriving the child, not just the parents, but the child of every other week with her mother cannot be in a child's best interest unless the mother's got something glaringly wrong with her. And this evidence doesn't have that. This case does not show that. Now, remember that there was a sanction issue by Judge Kelly against my client because, in his opinion, his judgment, she had not told the father soon enough about the change of pediatricians. And Judge Kelly made her do the lion's share of the driving. Instead of exchanging up in Lincoln, Illinois, they were meeting in Troy, Illinois. She was doing almost all the driving. But he punished her, but he didn't punish the child. The child still had those alternating weeks. It was so solemn, like, he did a great job. He kept the punishments on the heads of the parents, kept them off of the child. He did great. And really, nothing's different here. I mean, the father's very aggressively filed petitions, trying, and he's finally gotten somebody to listen to him who's changed the custody. So he's the lawyer. Yeah, he's the lawyer. Now he's got her except for holidays, some holidays, and alternating weekends. Well, he won. Well, who lost? Well, my client lost. And her daughter lost. Her daughter lost her mother for no good reason, no good reason whatsoever. Was there a substantial change in circumstances? We'll never know. But when you get past the technical, there's something wrong with this judgment. Right now, right now, this child, this preschool child should be spending every other week with her mother. And that's not being done. And this child's growing. I mean, this child's going to be another day older today. And that preschool time is almost up. This chance is almost gone. And this court has authority to fix this. And unless there's something, some good reason not to do it, this court can make it happen, can reinsert, can reinstall the alternating weeks of custody, can do it in standard under Rule 366, can do it right now. And we're asking that the court do that. Thank you. All right. Thank you, Counselor. We don't have a chance for rebuttal. Argument for the FLE. Good morning. May it please the Court. My name is Janie Desai, and I represent the FLE David Carr. The order appealed by Hawley in this case was an initial physical custody and primary residential custody determination, in which the trial court applied the factors outlined in the former Section 602 of the Illinois Marriage and Dissolution of Marriage Act to determine the best interest of the minor child, AC. First, I'd like to talk about the appropriate standard. For the trial court, the appropriate standard to employ an initial custody determination is best interest of the child. The appropriate standard for the reviewing court to employ at that point is abuse of discretion. The trial court is in the best position to observe the parties and their demeanors while testifying to assess credibility and the needs of the child. Here, the trial court reviewed the evidence presented and observed the parties as they testified to determine AC's best interest. Abuse of discretion would also be the appropriate standard for the reviewing court if the trial court had issued a modification of custody. However, in this case, the trial court's order of August 11, 2015, was an initial determination of custody, initial determination of physical and primary residential custody. The trial court entered a temporary visitation schedule in its judgment of dissolution and reserved jurisdiction, explicitly reserved jurisdiction, and set the matter for review four months later. In support of these explicit provisions, the trial court judge stated on the record, Judge Kelly, that the week-to-week schedule was contingent upon whether or not Holly moved to Watsika and obtained a permanent teaching position. The decision of the trial court to enter the temporary order and set the review date was based on Holly's arguments that she wanted to move to Watsika in order to pursue professional opportunities in the teaching profession. The trial court decided to see if Holly would be able to find that employment and reserve jurisdiction to change the visitation schedule if she did not. In fact, Judge Kelly explicitly stated on the record, if you think I'm going to let you go up there without any kind of job and have her for a week at a time, that probably won't happen. Judge Kelly set the matter for review in August 2014, but it was not heard until December 2014, along with issues raised by David in a petition for more to show cause. In addition to those issues, Judge Kelly again addressed Holly's employment and admonished her for moving to Watsika without first obtaining permanent employment. He reminded her on the record that the sole basis for him entering the temporary week-to-week schedule was so that she could obtain a full-time teaching job. He said that he would watch her very carefully over the next academic year and the visitation schedule would be greatly affected if she came back on the review date and still did not have permanent employment. He set the next review date for July 2015. Prior to that July 2015 review date, David's counsel filed a motion to modify physical custody schedule and purely as an oversight, set the matter for a hearing nine days before the review date. Since the motion to modify the physical custody schedule and the review date were addressing the same issues and essentially one and the same, the court canceled the previously set review date and heard everything on July 13, 2015. To again demonstrate that both parties were operating under the assumption that the week-to-week schedule was temporary, David's counsel clarified for the new presiding judge, Judge Gomerick, on the record that there had never been a final custody schedule entered in the matter and that Judge Kelly had merely just set the matter for review, set the matter for review. How long was this temporary custody in effect? From April 2014 until July, or I guess the order wasn't entered until August 2015. But the parties came back every few months for review dates during that period of time. When David's legal counsel stated on the record and clarified for Judge Gomerick that there had been no final custody determination made, Holly's attorney made no objection on the record. In fact, Holly's attorney, in his closing arguments, stated that what was before Judge Gomerick and the trial court was the best interest of AC. Judge Gomerick ordered the parties to then draft proposed judgments. Holly's attorney filed his proposed judgment with the trial court on July 27, 2015, which is actually a part of the record on appeal in this matter. In that proposed judgment, Holly states on page 1 that the issues presented are whether it is in the best interest of the minor child for the petitioner or the respondent to be the primary residential custodial parent and also what the appropriate visitation schedule is for AC. On page 9 of that proposed judgment, Holly explicitly states, based upon the foregoing findings of fact and considering all of the relevant factors set forth in 750 ILCS 5-602, it is hereby ordered, and then continues with her proposed order. Holly specifically and explicitly references Section 602, which was a statute governing initial custody determinations at the time of the proceeding. Neither during trial or in her proposed judgment does Holly mention that this was a modification, that David needed to demonstrate a substantial change in circumstances, or that the court needed to find one before modifying the visitation schedule. In fact, there was no mention of— Was there any statement on the record from opposing counsel about that? I know Mr. Blood was not counsel on below, so I'm asking you. I'm sorry. Was there any statement about what the hearing was about from opposing counsel at that hearing? And I was saying I know Mr. Blood, I believe, was substituted in the appeal. Is that right, Mr. Clark? That's right. So I believe that is—my question is, what was said by opposing counsel at that hearing about that issue? Well, opposing counsel never objected, like I said, to David's counsel's assertion that there was no previous custody order entered, and then in his closing argument stated that the standard for the court to consider was the best interest of AC. So— Were there affirmative statements from Holly's counsel at that hearing about that issue? I don't believe so. Were there any statements on the record by the judge prior to the hearing about what the judge felt the hearing was about? I—prior to the hearing? Yes. I'm sorry, I wasn't present at that time, but I don't believe so. So you're also substituted as counsel on appeal? I'm an associate attorney for the counsel that was present. All right, thank you for clarifying that. Sorry. Okay. It wasn't until Holly filed a motion to reconsider the judge's order that— and Holly filed the motion to reconsider and hired new counsel, that modification and section—the former section 610 was even first brought up. Counsel, let me ask you the question I asked Mr. Blood. The judgment of dissolution of marriage that was entered on April the 17th of 2014, that paragraph H under the order, sets the case for review on August the 7th, 2014. That's really the only thing said in the written order about it coming back to the trial court. Without—what takes precedence here? The judge's oral pronouncements on the record or what the written judgment says? Well, we're not asking for this court to ignore the judgment of dissolution, but by—I think it's the last two paragraphs in the judgment that reserve jurisdiction over the matter and set the matter for review. And then that accompanied with Judge Kelly's remarks on the record. That shows us that it was a temporary visitation schedule. And by the party's actions throughout the proceedings, all parties were operating under the assumption that the visitation schedule was not permanent. So I'm not—I believe that the judgment does take precedent, but the pronouncements made by Judge Kelly on the record just further support those. If, however, the court does determine that the trial court's order of August 11, 2015 was a modification of custody, the trial court's order was still non-abusive discretion. The former Section 610A of the Illinois American Dissolution of Marriage Act requires all motions of—all motions to modify custody brought within two years can only be brought if there is reason to believe the child's present environment shows endangerment to physical, mental, moral, or emotional health unless the parties stipulate to the modification of custody. If the parties stipulate, then the serious endangerment standard is obviated, pursuant to the author's notes to the statute in case law. Holly requested multiple times throughout trial that Judge Gomerich award her primary custody. In fact, it was Holly that initially proposed to Judge Gomerich during the proceeding that she be awarded primary custody and that David be awarded visitation only on alternate weekends and pursuant to a holiday schedule. Holly stated on the record it was in the AC's best interest for the week-to-week visitation schedule to be modified with Holly having the primary physical custody. In her proposed judgment filed with the court, she explicitly asked that Judge Gomerich grant her request to be designated as AC's primary residential custodian and to deny David's request for same. If Holly is going to argue that the trial court modified a permanent custody order based on David's request, her own marriage request can't then be ignored. They should be acknowledged and treated as a stipulation. Pursuant to the former section 610, once the serious endangerment standard is obviated, the court must then determine if there has been a substantial change in circumstances affecting either the parties or the child and whether a modification is in the best interest of the minor child. While a stipulation obviates a serious endangerment standard, it constitutes a substantial change in circumstances. So again, Holly's marriage request for modification would, both on the record during the trial and in her proposed judgment, demonstrate her stipulation. It was Holly that actually filed the proposed judgment with the trial court, stating that her request to be designated as primary residential custodian should be granted. And these situations are what the Supreme Court of Illinois contemplated when it stated it would be pointless and redundant to require parties to prove by clear and convincing evidence the same element that their agreement makes manifest. If David requested a modification of custody, then Holly clearly did as well. Case law provides that a stipulation satisfies the substantial change in circumstances but doesn't require that stipulation to be by pleading, and the court can look at the testimony of the parties throughout trial and other pleadings. If this court, however, were to determine that Holly's verbal stipulations are not sufficient to constitute substantial change in circumstances, the evidence presented at trial is more than sufficient. There's no clear line as to what actual scenarios would constitute a substantial change in circumstances. In the case in Reese-Smithson, the Fourth District determined that a change occurred when the parties were unable to communicate, and when they did communicate, they were unable to discuss or make decisions regarding the minor child. The Third District found a broader definition of substantial change in circumstances by looking at the totality of the circumstances and finding that if the inherent instability of the visitation schedule necessitates a modification pursuant to the child's best interest, even if it is difficult to pinpoint a precise change in circumstances, then such should be found. In this case, Holly demonstrated a continuing and severe inability to communicate with David in co-parenting AC. She argued that the court should have just simply sanctioned her rather than modify the physical custody schedule as Judge Kelly previously did in the case. However, that just demonstrates her inability to understand the gravity of her continued refusal to communicate with David and the effect of that on AC. Examples are that she did change AC's primary care doctor without informing David or even discussing the matter with him. It wasn't that she just didn't tell David soon enough, it was that she never discussed it with him and then didn't tell him even though she was communicating with him twice a week by Skype and then once a week during the visitation exchanges. She refused to give David access to AC's medical records or even list David as a contact at the new primary care doctor's office. She signed AC up for Head Start unilaterally without discussing that with David and then did not list David as a contact, as a parent, as a family member and even stated that AC's parental status was one. Holly failed to inform David of or share with him behavioral screenings conducted by Head Start. She failed to include or even inform David of the occurrence of family conferences that were conducted by Head Start. And it wasn't until David had to provide Head Start with a copy of his birth certificate. You can finish your sentence. Sorry. It wasn't until David provided Head Start with a copy of his birth certificate, AC's birth certificate, a copy of the judgment of disillusion, the joint parenting agreement in the matter and his social security card and a notarized letter from himself that he was finally given any access to his records, which he would not have had to do if Holly had just acknowledged him in the Head Start application. We just have... Thank you. Rebuttal. Thank you, Your Honor. Your Honor, the opposing counsel was correct on the time that the child was in alternating weeks custody. It was April 14 to August 15, 16 months. Your Honor, what did the trial court say about what the issue was? The first thing out of the trial court's mouth was incorrect. I forget what she said, even though I read it yesterday. But father's, opposing counsel to me, the father's counsel told the trial court, no, we're here on a motion to modify physical custody schedule that my client filed. So the pleading that your client filed was a motion to modify custody schedule? The pleading that opposing counsel filed? Yes, your opposing counsel. Was a motion to modify physical custody schedule. And as for my client, my client's trial counsel said, Your Honor, in response to another question, my client's counsel did not directly address that. My client also did not, my trial counsel did not file a responsive pleading to the motion to modify physical custody schedule. Just simply went in and defended the error. And your client then got new counsel to file a motion to reconsider. So we had trial counsel, we had new counsel on a motion to reconsider in the trial court. That is correct, and now me, yes. Well, what I heard, what I just heard was that the trial court explicitly reserved jurisdiction. If the trial court had explicitly reserved jurisdiction, would we even have had a final and appealable order? Now, I'm not so much of a tell you guy, I'm more of a show you guy. So I want to not hear the judge reserve jurisdiction, I want to see where the judge reserved jurisdiction. And I'm not seeing that, and I'm not hearing it either. And I've been through this record this week, and I don't see it. I still don't see it. And I read it with those claims in mind, and cover to cover, page by page, and I don't see it. Really, when you go through the record and read for what the judges say instead of what the parties say, not so much the testimony as the comments of counsel and the comments of the court, you get a totally different view of the case, and nothing's reserved. Where is it reserved? Don't tell me it's reserved. Show me where it's reserved. There is no reservation of jurisdiction in this case. And again, nothing that the excellent Judge Kelly said was inconsistent with Rule 610, and he certainly wasn't blowing his horn as he went into the curve saying I'm about to violate Section 610. It's a mirror rule, I call it. There was no hint that he was intended to violate Section 610B, and there was no reason for him to do it. And nothing he said was inconsistent with Section 610B. On the other hand, the order that Judge Gomerich signed, which apparently was prepared by opposing counsel, was wholesale disregard of Section 610B. And I know you saw in the reply brief where I quoted what happened at the hearing on reconsideration, which was where my predecessor counsel said before you get to best interests of the child, you've got to do substantial changes, circumstances. So right then and there, opposing counsel had that chance to get the judge an amended order, but no, no, opposing counsel said it's just semantics, Your Honor, it's just semantics. And even if it's not, I think we got it. And then argued down the motion to reconsider. But it was right there. Judge had every chance. Opposing counsel had every chance to get it right the first time. It just wasn't done. Stipulation. I don't know why I'm hearing all this talk on stipulation. There was no stipulation. The only stipulation in this record was that parties did not have to be apart for two years to receive a dissolution of marriage. We have argued that it is not in the best interest of a preschool child to be deprived of every other week custody of the mother when the mother lives a couple hours away from the father. We argue that. I don't think that's the issue in this case, but we have to take it. Thank you, counsel. We will take this matter under advisement and issue a written disposition in due court. Thank you.